IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARGARET FLORES,

        Plaintiff,

v.                                                No. CIV 02-0399 LCS

JO ANNE B. BARNHART
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 11), filed December 6, 2002. The Commissioner of Social Security issued a final decision denying Plaintiff's application for and supplemental security income. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), having considered the Motion, arguments of counsel, administrative record, and applicable law, finds that Plaintiff's Motion to Reverse and Remand for a Rehearing should be **DENIED**.

**Procedural Background**

Plaintiff, now forty-four years old, filed her application for supplemental security income on June 12, 1997, alleging disability commencing on August 1, 1987, due to anxiety attacks, neck pain and back pain. Plaintiff has a tenth grade education, vocational training and no vocationally relevant work experience.

The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's administrative law

judge (ALJ) denied the application on the ground that Plaintiff did not have a severe impairment or combination of impairments. The Appeals Council denied Plaintiff's request for review.

On March 23, 2000, Plaintiff filed a Complaint in this Court, seeking judicial review. On October 27, 2000, the parties stipulated to a remand for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g). The ALJ was directed to update the medical evidence, fully develop the evidence regarding Plaintiff's mental impairments and reevaluate the severity of the mental impairments in light of the *de minimis* step two severity standard.

On remand, the same ALJ conducted a second evidentiary hearing, took testimony from Plaintiff and a vocational expert and received additional medical evidence. At the second hearing, Plaintiff was represented by her current counsel. The ALJ issued his second decision on October 10, 2001, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 416.920(a)-(f).

At the first step of the sequential evaluation process, the ALJ found that Plaintiff had no vocationally relevant past work experience. At the second step, the ALJ determined that Plaintiff had severe impairments consisting of affective disorder, anxiety related disorder and dependent personality disorder. The ALJ found that Plaintiff's impairments due to tendonitis of the right shoulder, mild degenerative changes in the cervical spine, headaches and sinuitis were not severe. At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or medically equal any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599.

The ALJ found that Plaintiff was not credible and discounted the opinion of her treating physician. The ALJ determined that Plaintiff had no exertional limitations, but that her abilities to

deal with the public and to understand, remember and carry out complex job instructions were moderately limited.  Because Plaintiff had no past relevant work, the ALJ proceeded to step five.  At step five, the ALJ found that the Medical-Vocational Guidelines (Grids) were inapplicable because Plaintiff's ability to work was significantly compromised at all exertional levels.  Relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff was able to perform the jobs of housekeeper (D.O.T. # 323.687-014), advertising material distributer (D.O.T. # 230.687-010), or laundry spotter (D.O.T. # 361-684-018).[1]  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's the request for review.  Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether correct legal standards were applied. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). Evidence is not substantial if it is overwhelmingly contradicted by other evidence.  *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)(citation omitted).  The district court reviews of the entire record, and may not reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991).

---

[1] The ALJ identified the jobs only by their Dictionary of Occupational Titles (D.O.T) numbers.  (R. at 262-263.)

**Discussion**

Plaintiff argues that the ALJ failed to accord due deference to the opinion of the treating physician, that the ALJ selectively relied on unfavorable portions of the evaluating psychiatrist's report to the exclusion of portions favorable to Plaintiff, and that the ALJ erroneously relied on the testimony of the vocational expert and failed to meet the Commissioner's burden at step five.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. § 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

Plaintiff argues that the ALJ failed to accord due deference to the opinion of her treating physician, Dr. Stanford M. Varnado D.O. Dr. Varnado expressed the opinion that Plaintiff was unable to work. The ALJ discounted Dr. Varnado's opinion because it was unsupported by objective clinical findings and inconsistent with substantial evidence of record. (R. at 258; 260.) The ALJ pointed out that Dr. Varnado's notes consisted of lists of Plaintiff's subjective complaints, contained

4

little clinical objective findings and that his opinion was inconsistent with his extant objective findings and the rest of the record. (R. at 258.) The ALJ further observed that Dr. Varnado was not a psychiatrist and despite Dr. Varnado's assertion that Plaintiff had undergone "many years" of psychological treatment, the record did not show that she had ever sought or obtained such treatment. (R. at 260.)

Dr. Varnado is a primary care physician who treated Plaintiff on a regular basis beginning in January 1996 for sore throat, ear pain, sinus congestion, stomach pains, insomnia, muscle spasms, diarrhea, neck pain, shoulder pain, back pain, headaches, heartburn, menopause, allergy symptoms, depression, stress, anxiety and panic attacks. (R. at 134-198; 292-355.) Plaintiff told Dr. Varnado that she was stressed because her mother had cancer, her family was harassed by gangs, and she felt powerless with respect to her children. (R. at 146; 166; 167; 335.) On May 18, 1997, Dr. Varnado referred Plaintiff to Dr. David Negron, D.P.M. for treatment of ingrown toenails. (R. at 159.) X-rays of the cervical spine and right shoulder taken on July 1, 2000 showed no evidence of fracture, subluxation, or prevertebral soft tissue swelling, but did indicate mild degenerative changes in the lower cervical spine. (R. at 313.) On July 14, 2000, Dr. Varnado referred Plaintiff to Dr. Anthony Pachelli, M.D. for assessment of right shoulder pain. (R. at 307-310.) X-rays were normal. (*Id.*) Dr. Pachelli diagnosed tendonitis of the right shoulder and radicular neck pain. (*Id.*)

On October 2, 1997, Dr. Varnado wrote that Plaintiff had been diagnosed with panic attacks, depression, headaches, arthritis, peptic ulcer disease, chronic foot and back pain, and that she "cannot work at this time because she is under tremendous stress right now." (R. at 165.) On an agency form dated July 21, 1998, Dr. Varnado rated Plaintiff's ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, deal with work stresses, function independently and maintain

attention/concentration, understand, remember and carry out simple and detailed job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situation and demonstrate reliability as "good." (R. at 127-128.) Dr. Varnado assessed Plaintiff's ability to deal with the public and understand remember and carry out complex job instructions as "fair." (*Id*.) "Fair" is defined on the form as "seriously limited, but not precluded." (R. at 127.)

In an August 26, 1999 letter, Dr. Varnado added that Plaintiff had a peptic ulcer and reiterated his view that Plaintiff was unable to work. (R. at 330.) On January 26, 2000, Dr. Varnado wrote that Plaintiff suffered from severe panic attacks, severe depressive states, multiple family problems and had a paranoid demeanor. (R. at 326.) Dr. Varnado stated that "[i]t is very hard for [Plaintiff] to work in close, crowded and stressful environments.  For these reasons, [Plaintiff] has been unable to work or cope with environmental and social stresses." (*Id*.) Dr. Varnado recounted that Plaintiff had been diagnosed with anxiety disorder (panic attacks), depressive disorder, chronic neck, shoulder and back pain, arthritis, headaches and insomnia, and concluded that Plaintiff was unable to work. (*Id*.) In a May 7, 2001 letter, Dr. Varnado added that Plaintiff had been diagnosed with obsessive compulsive disorder, that she had suffered from phobias and panic attacks since age twenty, and had been treated by "many physicians, psychologists and counselors for many years." (R. at 345.) Dr. Varnado repeated his view that Plaintiff was unable to work. (*Id*.)

A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. *See Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995). However, this deference is premised on several factors, including the degree to which the physician's opinion is supported by relevant evidence, the consistency between the opinion and the record as a whole and whether the physician is a specialist in the area upon which an opinion is rendered.

6

*Goatcher*, 52 F.3d at 290 (*citing* 20 C.F.R. §404.1527(d)(2)-(6)).  The ALJ may disregard the opinion of a treating physician where it is unsupported by relevant evidence, inconsistent with the record as a whole, or if other factors contradict the opinion.  *Goatcher*, 52 F.3d at 290.

In this case, the ALJ discounted Dr. Varnado's opinion after the ALJ provided an explanation based on the *Goatcher* factors: the opinion was unsupported by objective clinical findings and inconsistent with substantial evidence of record.  Dr. Varnado's office notes consisted primarily of lists of Plaintiff's complaints and lists of medications that Dr. Varnado prescribed for the complaints.  Dr. Varnado's notes do not contain any abnormal objective findings; the notes only document Plaintiff's subjective complaints. Although Dr. Varnado recorded Plaintiff's complaints of neck and right shoulder pain, these conditions were not borne out by objective medical tests.  Cervical spine x-rays were essentially normal, showing only mild degenerative changes.  Dr. Pachelli, the orthopedic surgeon, found that x-rays of Plaintiff's right shoulder were normal and diagnosed tendonitis.  Dr. Varnado is not a specialist in the field of psychiatry or psychology.  Despite Dr. Varnado's assertion that Plaintiff had undergone "many years" of psychological treatment, (R. at 345), the record contains no indication that Plaintiff ever sought or obtained such treatment.  On this record, the ALJ had good cause to discount Dr. Varnado's statements regarding disability and his opinion is supported by substantial evidence.

Plaintiff contends that the ALJ sifted through the evaluating psychiatrist's report and relied on unfavorable portions to the exclusion of portions favorable to Plaintiff. On September 17, 1997, Dr. Carlos Balcazar, M.D. performed a consultative psychiatric examination on Plaintiff. (R. at 102-104.)  Dr. Balcazar described Plaintiff as having a dependant personality and displaying anxiety.  (R. at 102.)  Plaintiff's anxiety, and especially her dependancy, interfered with Dr. Balcazar's ability to

obtain information from Plaintiff. (*Id*.) Plaintiff "would not even make an effort to try to remember in order to provide pertinent information." (R. at 103.) Dr. Balcazar found that Plaintiff had free-floating anxiety and panic attacks and diagnosed panic disorder without agoraphobia and personality disorder, dependant type. (R. at 104.) Dr. Balcazar opined that Plaintiff would have adequate judgment to plan a simple work sequence, but that her anxiety could interfere with her capacity to use tools and materials for simple jobs or perform repetitive tasks at a competitive rate, and that she would "most probably" have difficulty interacting with co-workers and supervisory personnel. (R. at 104.)

The ALJ stated that he gave great weight to Dr. Balcazar's opinion that Plaintiff had adequate judgment to plan a simple work sequence and that she would have difficulty interacting with co-workers and supervisory personnel. (R. at 260.) However, the ALJ did not give great weight to Dr. Balcazar's opinion as to the possible limitations that might arise due to her anxiety symptoms because Plaintiff did not put forth a good effort during the examination. (*Id*.)

The ALJ must discuss the uncontroverted evidence that he chooses not to rely upon, as well as significantly probative evidence that he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A careful reading of the ALJ's opinion reveals that the ALJ discussed the parts of Dr. Balcazar's report that the ALJ chose not to rely upon. Although Dr. Balcazar felt that Plaintiff's poor effort may have been related to her dependent personality, he did not affirmatively link the lack of cooperation with a mental impairment. Contrary to Plaintiff's assertion, the ALJ did not ignore evidence that was favorable to Plaintiff, but instead considered the entire report in light of the entire record. The court may not reweigh the evidence or try the issues *de novo* or substitute its judgment for the of the Commissioner. *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 (10th Cir. 1992). The ALJ

8

gave valid and specific reasons for discounting certain aspects of Dr. Balcazar's report. In light of the report and the entire record, the decision to discount the portion of Dr. Balcazar's report concerning possible limitations that might arise due to Plaintiff's anxiety symptoms was supported by substantial evidence.

Plaintiff asserts that the ALJ erroneously relied on the testimony of the vocational expert and failed to meet the Commissioner's burden at step five. At the fifth step of the sequential evaluation process, the burden shifts to the Commissioner to prove that the claimant is not disabled. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). The ALJ relied on the testimony of the vocational expert (VE) and concluded that Plaintiff was able to perform the jobs of housekeeper, advertising material distributer, or laundry spotter to satisfy. (R. at 262-263.) At the hearing, the ALJ presented a hypothetical question to the VE, setting forth an individual of Plaintiff's age, education, and work experience and describing the limitations he found credible and supported by the evidence.

The ALJ asked the VE to assume a younger person with a limited education, with the ability to perform light work, but with moderate limitation on the ability to interact with the public and moderate limitation on understanding detailed instructions, and following through on detailed instructions. (R. at 386-387.) The VE testified that such a person could perform the jobs of housekeeper, advertising material distributer or laundry spotter and that such jobs existed in significant numbers in the national economy and in New Mexico. (R. at 388.)

Plaintiff argues that the advertising material distributer job fails to satisfy the Commissioner's burden at step five to produce evidence of a significant number of jobs because such positions are temporary and would entail periods of unemployment. The VE testified that 260,000 of the advertising material distributer jobs existed nationally and 455 existed in New Mexico. (R. at 388.)

9

On cross examination, the VE testified that advertising materials distributer jobs were full-time but temporary in the sense that a worker would need to move from employer to employer with intervening periods of unemployment. (R. at 392.)

A claimant will not be found disabled if she can perform "work that exists in the national economy," which means "work ... exist[ing] in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The determination that work exists in significant numbers in the national or regional economy does not depend on whether the work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired for a job if he or she applied. *Id*. The Tenth Circuit has not established a bright line rule of how many jobs are necessary to constitute a significant number, but leaves that decision to the ALJ's "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Trimiar*, 966 F.2d at 1330. In determining whether a significant number of a particular job exists, several factors are considered including the level of claimant's disability, the reliability of the vocational expert's testimony, the distance claimant is capable of traveling to engage in the assigned work, the isolated nature of the job, and the types and availability of such work. *Trimiar*, 966 F.2d at 1330.

The VE testified that 260,000 of the advertising material distributor jobs existed nationally and 455 existed in New Mexico. In *Trimiar*, the Tenth Circuit held that 650 to 900 jobs in the state of Oklahoma qualified as a significant number when other factors relevant to the determination were addressed. *Trimiar*, 966 F.2d at 1330. In this case, the ALJ properly considered the severity of Plaintiff's impairments, their impact on her ability to work and the availability of the job in New Mexico. Plaintiff presents no reason to question the expert's reliability. The parties have offered no

legal authority on the issue of whether a temporary job satisfies the step five burden and additional legal research has been fruitless.  In addition to the advertising material distributor job, the VE testified that Plaintiff was capable of performing the job of housekeeper and that there were 869,000 housekeeper jobs nationally and 5,000 such jobs in New Mexico.  Vocational expert testimony that the plaintiff is capable of performing one or more occupations is sufficient to meet the Commissioner's burden at step five.  *See* 20 C. F. R. §416.966(b); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). Under these circumstances, the ALJ properly relied on the VE testimony and satisfied the Commissioner's burden at step five.

Plaintiff argues that she could not meet the demands of the housekeeper job because her anxiety limited her ability to perform one or two step repetitive tasks.  Dr. Balcazar opined that Plaintiff's anxiety could interfere with her capacity to use tools and materials for simple jobs or perform repetitive task at a competitive rate.  I have already determined that the ALJ properly discounted this portion of Dr. Balcazar's report.  Hypothetical questions posed to a vocational expert need only reflect impairments and limitations supported by the record.  *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).  The ALJ posed hypothetical questions to the VE that adequately reflected the nature and severity of Plaintiff's impairments as borne out by substantial evidence in the record. The ALJ satisfied the Commissioner's burden at step five and the decision is supported by substantial evidence.

**<u>Conclusion</u>**

Upon review of the administrative record and the arguments presented, the Court has determined that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 11), filed December

6, 2002, should be **DENIED**.

      **A JUDGMENT CONSISTENT WITH THIS MEMORANDUM OPINION WILL ISSUE.**

_____

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**